UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| JOSEPH G. DARBONNE | : | DOCKET NO. 06-0067 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is supported by substantial evidence in the record and is consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On December 1, 2003, Joseph G. Darbonne protectively filed the instant claim for Disability Insurance Benefits. (Tr. 41-44). He alleged an inability to work since February 15, 2003, due to high blood pressure, back problems, arthritis, 18% disability in the right ankle, right hand problems, vision problems, borderline diabetes, high cholesterol, and mouth and teeth problems. (Tr. 42, 52). The claim was denied at the initial level of the administrative process. (Tr. 21, 24-27). Thereafter, Darbonne requested, and received an August 24, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 246-282). However, in an October 21, 2005,

written decision, the ALJ determined that Darbonne was not disabled under the Act, finding at Step Five of the sequential evaluation process that he could make an adjustment to work which exists in significant numbers in the national economy. (Tr. 11-19). Darbonne appealed the unfavorable decision to the Appeals Council. Yet, on December 15, 2005, the Appeals Council denied Darbonne's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

Darbonne now seeks to have this court review the denial of benefits. He alleges the following errors:

(1) the ALJ's residual functional capacity is not supported by substantial evidence; and

(2) the ALJ posited a defective hypothetical to the vocational expert.

## **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any

substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issue 1**:

At Step Two of the sequential evaluation process, the ALJ determined that plaintiff suffered severe impairments of: high blood pressure, arthritis in the right hand and right ankle,

3

diabetes, high cholesterol, back pain, attention deficit disorder, and major depression. (Tr. 13, 18). However, the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *Id.*[1]

The ALJ next determined that Darbonne retained the residual functional capacity for light work, with a sit or stand option, changing positions hourly in a low stress environment. (Tr. 15).[2] In making his determination, the ALJ relied principally on the hearing testimony of Donald Gibson, M.D. Darbonne complains that Dr. Gibson did not have all of the medical records before him when he opined that plaintiff retained the capacity for light work. However, the

---

[1] Plaintiff argues that the ALJ failed to document the psychiatric review technique. The regulations now require that a psychiatric review technique form be completed during the initial and reconsideration phases of the administrative review process. 20 C.F.R. § 1520a(e). The ALJ's only duty is to incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision. *Id.* Here, the ALJ so complied. (Tr. 14).

In any event, the Fifth Circuit has held that an ALJ's failure to complete a psychiatric review technique form is not a substantive error requiring remand, – provided that the ALJ's decision is adequately supported by the record, with due consideration of the different aspects of the claimant's mental condition. *McGehee v. Chater*, 95-10499 (5th Cir. 1996) (unpublished)(citing, *Maya v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1984)). Here, there is ample evidence to support the ALJ's decision. *See*, discussion, *infra*.

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

hearing transcript reveals that Dr. Gibson was provided with the most recent medical records (10F and 11F) and was afforded time to review them. (Tr. 262-263, 267-268).

Plaintiff further challenges the ALJ's failure to adopt any manipulative limitations associated with his right hand arthritis. However, Darbonne professed the retained dexterity to: shave, bathe, dress, prepare meals, drive, perform household chores, pay bills, and play chess. (Tr. 68-72). Moreover, plaintiff's right hand arthritis did not prevent him from carrying large and heavy objects such as lawn mowers. (Tr. 205). All of this evidence was before Dr. Gibson, who opined, in effect, that plaintiff's arthritis did not effect any significant restriction in functioning beyond the limitation to light work. (*See*, Tr. 267-268).[3] In sum, we find that the ALJ's physical residual functional capacity assessment is supported by substantial evidence.[4]

Of greater concern, however, is the ALJ's mental residual functional capacity determination. In his decision, the ALJ relied on Dr. Gibson's "opinion" that plaintiff's mental impairments would require him to work in a low stress environment. (Tr. 268). However, the ALJ acknowledged that Dr. Gibson, a thoracic surgeon, was not an expert in psychology or psychiatry. (*See*, Tr. 269-271). Moreover, Dr. Gibson deferred to the opinions of the examining consultative examiners, Charles Robertson, Psy.D., and Lawrence S. Dilks, Ph.D. (Tr. 268, 270).

In this regard, the record reveals that on May 31, 2004, Darbonne underwent a psychological assessment with Dr. Robertson at the request of Disability Determination Services. (Tr. 137-139). Upon presentation, Darbonne was fully conscious, alert, and oriented. *Id.*

---

[3] At the hearing, plaintiff admitted that he could lift up to 20-25 pounds, stand about an hour and a half, and walk up to two hours. (Tr. 260).

[4] Plaintiff also argues that the ALJ overlooked his medication-induced drowsiness. However, plaintiff never asserted that this was a problem at the hearing. In fact, Darbonne retained the ability to drive. (Tr. 133). Rather than drowsiness, plaintiff reported complaints of insomnia and restlessness to the consultative physicians. (Tr. 138, 235).

5

Attention and concentration skills were intact. *Id.* Speech was essentially normal. *Id.* Reading and writing skills were preserved. *Id.* Darbonne exhibited a severe delayed auditory memory impairment. *Id.* His mental control was impaired. *Id.* The 15 Item Test for malingering resulted in a valid range of effort. *Id.* Robertson diagnosed major depression, untreated, and assigned a GAF of 55/55. *Id.*[5] He opined that Darbonne's depression did not appear to constitute a major barrier to employment. *Id.*

Three months later, on September 1, 2004, Darbonne underwent a psychological evaluation with Dr. Dilks at the request of Louisiana Rehabilitation Services. (Tr. 233-240). Upon evaluation, Darbonne's mood was anxious and depressed. *Id.* Darbonne reported feelings of moderate depression. *Id.* He reported poor appetite, sleep disturbance, and fatigue. *Id.* Dilks observed that Darbonne's attention and concentration skills were mildly impaired. *Id.* He was oriented to person, place, and time. *Id.* There was evidence of visual-perceptual deficits. *Id.* Upon administration of the WAIS-III, Darbonne obtained a verbal IQ of 88, a performance IQ of 84, and a full scale IQ of 85. *Id.* The scores revealed that Darbonne was functioning in the low average range of intelligence. *Id.* The depression inventory produced a score indicating moderate depression. *Id.* The 15-Item Test for malingering was successfully completed, and secondary gain did not appear to be an issue. *Id.*

Dilks diagnosed major depression, recurrent, moderate without psychosis; anxiety disorder, NOS, moderate-severe; chronic pain disorder, mild moderate. *Id.* He assigned a

---

[5] A GAF of 55 denotes moderate symptoms or moderate difficulties in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition DSM-IV, p. 32.

current GAF of 45-50. *Id.*⁶ Dilks observed that work or school deadlines may not be met. *Id*. He opined that Darbonne suffered severe limitations in the realms of self-care, mobility, communication, and work skills. *Id*. Specifically, Darbonne lacked the capacity to learn and perform job tasks or to adapt their attitudes, skills, and expectations needed to maintain gainful employment. *Id*. Darbonne's prognosis was fair. *Id*.

Arguably, the ALJ should have included the limitations as recognized by the examining consultative examiners in his residual functional capacity determination. However, at Step Five of the sequential evaluation process, the vocational expert ("VE") stated that she had reviewed Darbonne's psychological reports and opined that nothing in them changed the types of jobs that she had identified at the hearing. (Tr. 275; *see* discussion, *infra*)Thus, any error in the ALJ's mental residual functional capacity determination was harmless. *See, Frank v. Barnhart*, 326 F.3d 618, 622 (5ᵗʰ Cir. 2003)(citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988))..⁷

**Issue 2**:

With the assistance of a VE, the ALJ concluded at Step Four of the sequential evaluation process that Darbonne was unable to return to his past relevant work. (Tr. 17, 19). Accordingly, the ALJ proceeded to Step Five. At this step, the ALJ determined that plaintiff was a younger

---

⁶ A GAF of 45-50 denotes serious symptoms, or any serious impairment in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition DSM-IV, p. 32.

⁷ Plaintiff argues that the ALJ failed to address a mental residual functional capacity assessment form completed by a non-examining agency physician, Jack L. Spurrier, Ed. D. (Tr. 148-161). However, we question whether a Doctor of Education is sufficiently qualified in the field of adult mental health to render an opinion regarding plaintiff's mental limitations. Moreover, plaintiff acknowledged that reliance upon Spurrier's findings of moderate limitations alone would be mistaken, in light of Dr. Dilks' findings of severe limitations. (Pl. Memo., pg. 8).

7

individual, with a limited education, and transferable skills. (Tr. 17).[8] Using the medical-vocational guidelines as a framework, the ALJ concluded that Darbonne was not disabled pursuant to Rule 202.19. However, because Darbonne was unable to perform the full range of light work, the ALJ relied on the testimony of a VE who opined that plaintiff would be capable of making an adjustment to perform other jobs that exist in significant numbers in the national economy. (Tr. 18).[9]

Plaintiff contends that the ALJ's hypothetical to the VE was not supported by substantial evidence. While we agree that the ALJ's initial hypothetical was arguably not supported by substantial evidence, the ALJ effectively articulated a second hypothetical which included the limitations recognized by the examining mental consultants. (Tr. 75; *see* discussion, *supra*). This latter hypothetical is supported by substantial evidence. (Tr. 137-139, 233-240). That is all that is required. *See, Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).

For the foregoing reasons, the undersigned finds that plaintiff's assignments of error lack merit, and that the Commissioner's determination that plaintiff was not under a "disability," as defined by the Social Security Act, is supported by substantial evidence and is free of legal error. Therefore,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)(c), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.

---

[8] At the time of the hearing, Darbonne was 45 years old. (Tr. 251).

[9] A tire buffer, a tire inspector, a tire classifier, a laminator II, a sorter, and a final inspector were identified as examples. (Tr. 18, 274-275).

Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on October 30, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE